JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 23-2112 JGB (SPx) | Date | January 18, 2024 |
|---|---|---|---|
| Title | *Jessica Cardona v. Durham School Services, L.P., et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None | None |

**Proceedings:** **Order (1) DISCHARGING Order to Show Cause (Dkt. No. 21); (2) REMANDING Case to County of San Bernardino Superior Court; (3) DENYING AS MOOT Defendant's Motion for Judgment on the Pleadings (Dkt. No. 11); and (4) VACATING the January 22, 2024 Hearing (IN CHAMBERS)**

Before the Court is a motion for judgment on the pleadings filed by defendants Durham School Services, L.P. ("Durham") and National Express, LLC ("National Express") (collectively, "Defendants"). ("MJP," Dkt. No. 11.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the MJP, along with the parties' responses to the Court's order to show cause as to jurisdiction (Dkt. Nos. 21-23), the Court **DENIES AS MOOT** the MJP, **REMANDS** the case to County of San Bernardino Superior Court, and **VACATES** the January 22, 2024 hearing.

## I. BACKGROUND

On August 3, 2023, plaintiff Jessica Cardona ("Cardona" or "Plaintiff") filed a first amended class action complaint as an individual and on behalf of all others similarly situated against Defendants in Superior Court of California, County of San Bernardino. ("FAC," Dkt. No. 1 at 16.) The FAC alleges ten causes of action: (1) failure to authorize or permit meal periods in violation of California Labor Code ("Labor Code") §§ 226.7 and 512; (2) failure to authorize or permit rest periods in violation of Labor Code §§ 226.7; (3) failure to provide complete and accurate wage statements in violation of Labor Code § 226; (4) failure to pay all overtime and

minimum wages in violation of Labor Code §§ 510, 558, and 1194; (5) failure to pay all wages for all time worked, including minimum wage in violation of Labor Code §§ 204, 218, 1194, 1197, and 1198; (6) failure to pay all accrued and vested vacation/paid time off ("PTO") wages in violation of Labor Code § 227.3; (7) failure to adequately indemnify employees for employment-related losses/expenditures in violation of Labor Code § 2802; (8) failure to timely pay all earned wages and final paychecks due at the time of separation of employment in violation of Labor Code §§ 201, 202, and 203; (9) unfair business practices in violation of the California Business and Professions Code § 17200, et seq. ("UCL"); and (10) violation of Private Attorneys General Act, Labor Code § 2698, et seq. ("PAGA"). (See FAC.)

On October 13, 2023, Durham removed the case to this Court. ("NOR," Dkt. No. 1.) Defendants assert jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), and federal question jurisdiction pursuant to 28 U.S.C. § 1331 and Section 301 of the Labor Management Relations Act ("LMRA"). (Id.)

On November 6, 2023, Defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on the grounds that (1) Cardona's meal period, overtime, and vacation pay claims are all preempted by Section 301 of the LMRA; (2) Cardona's claims under the Business and Professions Code §§ 17200, et seq, fail to allege that there is no adequate remedy at law; and (3) Cardona's meal period claims and rest period claims fail to state a plausible claim to relief. (See MJP.) Defendants also move the Court to strike the class definition from the FAC because the class definition is temporally overbroad and exceeds the statute of limitations. (Id.) The same day, Defendants filed a request for judicial notice of two collective bargaining agreements ("CBAs"). ("RJN," Dkt. No. 12.) On November 13, 2023, Plaintiff opposed the MJP. ("MJP Opposition," Dkt. No. 15.) On November 20, 2023, Defendants replied. ("MJP Reply," Dkt. No. 17.)

On December 7, 2023, the Court ordered Defendants to show cause why this action should not be remanded for lack of subject matter jurisdiction. ("OSC," Dkt. No. 21.) On December 22, 2023, Defendants timely responded to the OSC. ("OSC Response," Dkt. No. 22.) In support, Defendants filed the declaration of Annette Johnson ("Johnson") ("Johnson Decl.," Dkt. No. 22-1); and the declaration of Tom Moran ("Moran") ("Moran Decl.," Dkt. No. 22-2). On January 5, 2024, Plaintiff replied to the OSC Response. ("OSC Reply," Dkt. No. 23.) In support, Plaintiff filed evidentiary objections to the Moran Decl. ("Evidentiary Objections," Dkt. No. 23-1.) Accordingly, the Court **DISCHARGES** the OSC and addresses the issue of jurisdiction below.

## II. LEGAL STANDARD

### A. Remand

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). "The right of removal is entirely a creature of statute and 'a suit

commenced in a state court must remain there until cause is shown for its transfer under some act of Congress.'" Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002) (quoting Great N. Ry. Co. v. Alexander, 246 U.S. 276, 280 (1918)). Where Congress acted to create a right of removal, those statutes, unless otherwise stated, are strictly construed against removal jurisdiction. See id. "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (per curiam) (internal quotation marks omitted); Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 684 (9th Cir. 2006) (per curiam) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"). Moreover, if there is any doubt regarding the existence of subject matter jurisdiction, the court must resolve those doubts in favor of remand to state court. See Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009); Gaus, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance").

**B. CAFA**

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Id. at 1197 (quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id.

A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." Sanchez v. Monumental Life. Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted). The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory

of damages exposure." Id. at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Id. at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Id.

Under certain circumstances, attorneys' fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted). However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." Id. at 796.

### C. Judgment on the Pleadings

Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure[1] 12(c). Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). Like a Rule 12(b)(6) motion, a Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings. For purposes of a Rule 12(c) motion, the allegations of the non-moving party must be accepted as true. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989) (citing Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984)). Further, all allegations of the non-moving party must be construed in favor of that party. Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989). Judgment on the pleadings is proper when the moving party establishes that no material issue of fact remains to be resolved and it is entitled to judgment as a matter of law. Hal Roach, 896 F.2d at 1550.

When granting a motion for judgment on the pleadings, a court should grant leave to amend if the complaint can be cured by additional factual allegations. Somers v. Apple, Inc., 729 F.3d 953, 960 (9th Cir. 2013). However, "dismissal without leave to amend is proper if it is clear that the complaint [cannot] be saved by amendment." Id. (citation omitted).

### III.   DISCUSSION

Defendants assert that the Court has jurisdiction on two bases: (1) CAFA, 28 U.S.C. § 1332(d)(2), and (2) federal question jurisdiction, 28 U.S.C. § 1334, in combination with supplemental jurisdiction, 28 U.S.C. § 1367(a). (NOR at 2.) Defendants argue that some of

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise stated.

Plaintiff's claims are pled as claims that arise exclusively out of collective bargaining agreements,[2] which preempt the claims under Section 301 of the LMRA and give rise to federal question jurisdiction. (Id.)

In her MJP Opposition, Plaintiff argues that the Court should remand the action because it lacks subject matter jurisdiction and the alleged amount in controversy ("AIC") is not supported by evidence. (Opposition at 15.) Plaintiff contends that the FAC does not assert any claims based on rights under either of the two relevant CBAs or require interpretation of those CBAs. (Id.) Plaintiff further contends that Defendants do not meet their burden to establish the $5,000,000 AIC required for CAFA federal jurisdiction. (Id. at 15-16.) The FAC does not facially challenge rights under the CBAs, nor does it specify an amount in damages. (NOR at 4-7.) Defendants do not attach any evidence or declarations in its NOR. The Court addresses each argument below.

### A. LMRA Preemption

Defendants assert that Plaintiff's claims for statutory meal period violations, unpaid statutory overtime wages, and unpaid PTO wages are either based upon or preempted by Section 301 of the LMRA because they arise out of the CBAs and/or require interpretation of the CBAs. (NOR at 8-10.) Plaintiff does not dispute that they are bound by the CBAs. (See MJP Opposition at 1-2.) Instead, Plaintiff argues that the LMRA does not apply, therefore the Court does not have subject matter jurisdiction over her overtime and meal period claims. (OSC Reply at 1.)

Section 301 of the LMRA vests federal courts with jurisdiction to hear actions "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . without respect to the amount in controversy or without regard to the citizenship of parties." 29 U.S.C. § 185(a). However, preemption under Section 301 "extends only as far as necessary to protect the role of labor arbitration in resolving CBA disputes." Alaska Airlines Inc. v. Schurke, 898 F.3d 904, 913–14 (9th Cir. 2018) (en banc). The U.S. Supreme Court has stated that Section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law[.]" Livadas v. Bradshaw, 512 U.S. 107, 123 (1994). "Clearly, § 301 does not grant the parties to a collective-

---

[2] In support of the MJP, Defendants filed a request for judicial notice ("RJN," Dkt. No. 12) of two CBAs between Defendants and Plaintiff's union: the CBA effective from September 1, 2018 to August 31, 2021 ("First CBA," RJN, Ex. A) and the CBA effective from September 1, 2021 to August 31, 2024 ("Second CBA," RJN, Ex. B) (collectively, "CBAs"). Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). Plaintiff neither opposes Defendants' request nor disputes the validity of the CBAs. The Court therefore **GRANTS** Defendants' RJN. See Jones v. AT&T, 2008 WL 902292 (N.D. Cal. Mar. 31, 2008) ("[R]elevant case law supports the proposition that the Court may take judicial notice of a CBA in evaluating a motion to dismiss.").

bargaining agreement the ability to contract for what is illegal under state law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 212 (1985). For this reason, "[s]etting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional power of the states, and will naturally result in labor standards that affect workers differently from one jurisdiction to the next, even when those workers fall under a single labor agreement." Alaska Airlines, 898 F.3d at 919–20 (9th Cir. 2018); see Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1032 (9th Cir. 2016) ("Critically, 'not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301.'" (quoting Lueck, 471 U.S. at 211)).

In the Ninth Circuit, courts conduct a two-step inquiry to determine whether Section 301 preempts state law claims. Kobold, 832 F.3d at 1032. "First, a court must determine 'whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there.'" Id. (alteration in original) (quoting Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007)). Courts "evaluate the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself." Alaska Airlines, 898 F.3d at 921 (quoting Livadas, 512 U.S. at 123). "By contrast, claims are not simply CBA disputes by another name, and so are not preempted under the first step, if they just refer to a CBA-defined right, rely in part on a CBA's terms of employment, run parallel to a CBA violation, or invite use of the CBA as a defense." Id. (citations omitted).

Second, if the right exists independently of the CBA, courts "ask whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration." Id. At this second step, a court must "decide whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." Burnside, 491 F.3d at 1060 (alteration in original) (quoting Livadas, 512 U.S. at 125). The term "interpret" is construed narrowly; "it means something more than 'consider,' 'refer to,' or 'apply.'" Alaska Airlines, 898 F.3d at 921 (quoting Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000)). Where there is no "active dispute over the meaning of contract terms," Section 301 preemption is not triggered. Dent v. Nat'l Football League, 902 F.3d 1109, 1116 (9th Cir. 2018) (quoting Alaska Airlines, 898 F.3d at 921). In other words, "as long as the state-law claim can be resolved without interpreting the agreement itself," there is no Section 301 preemption. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 409–10 (1988).

**B. Overtime Claims**

   1. **Burnside Step One**

In her fourth cause of action, Plaintiff alleges that Defendants "permitted employees to work in excess of eight hours in a workday and/or over 40 hours in a workweek without overtime pay and over 12 hours in a workday without double-time pay." (FAC ¶ 47; see also id. ¶ 88.) Plaintiff acknowledges that she asserts overtime claims. (See OSC Reply at 1.)

Defendants argue that Plaintiff's overtime claim is preempted under the two-step Burnside test "because any right to overtime exists solely as a result of the CBA." (OSC Response at 4.) Defendants assert that because the CBA meets the requirements of Labor Code Section 514 ("Section 514"), Plaintiff's overtime claim arises out of the CBA and/or requires interpretation of the CBA such that it is preempted by Section 301 of the LMRA. (See id. at 4-7.) The Court is unconvinced.

Defendants primarily rely on Curtis v. Irwin Indus., Inc., 913 F.3d 1146 (9th Cir. 2019) to support their argument. (See OSC Response.) In Curtis, a plaintiff brought overtime claims under section 510. Id. at 1153. The Ninth Circuit concluded that California "deemed it appropriate to allow unionized employees to contract around section 510(a)'s requirements by bargain[ing] over not only the **rate** of overtime pay, but also **when** overtime pay will begin." Id. at 1153 (internal quotations omitted) (emphasis in original). "[W]hen such a bargain has been struck, courts look to the CBA to determine the definition of overtime." Id. at 1155. Thus, "if [the plaintiff's] CBAs in this case meet the requirements of section 514, [the plaintiff's] right to overtime 'exist solely as a result of the CBA,' and there is preempted under [section] 301." Id. at 1154. Since the Ninth Circuit determined the CBA in Curtis satisfied section 514's requirements, the LMRA preempted the claim. Id. at 1155.

The first question is whether the CBAs comply with Section 514. If they do, Plaintiff's right to overtime "exists solely as a result of the CBA," Kobold, at 1032, and their claims fail "at step one of the preemption analysis," Curtis, at 1155.

Under Section 514, a valid collective bargaining agreement must:

> [E]xpressly provide[ ] for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Labor Code § 514.

Plaintiff challenges whether the CBAs qualify under Section 514. (MJP Opposition at 8; OSC Reply at 4.) Specifically, Plaintiff alleges that Defendants do not pay "premium wage rates for all overtime hours worked" and Defendants do not pay "a regular hourly rate of pay" for all regular hours worked. (MJP Opposition at 10; see FAC ¶¶ 9, 46-59.) Defendants assert that the CBAs provide for premium wage rates for all overtime hours worked and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate. (NOR at 9; OSC Response at 2.) Beyond this, Defendants fail to elaborate or provide evidence in support of this proposition.

The party asserting the Court's subject matter jurisdiction carries the burden to establish jurisdiction and, moreover, Section 514 is an affirmative defense to be utilized by the employer, which has the burden to prove the exemption. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182-83 (1936)). The Court finds that Defendants fail to meet its burden to establish that the CBAs provide premium wage rates for all overtime hours worked and a regular hourly rate of pay of not less than 30 percent more than the minimum wage.

Because the CBAs fail to satisfy all of Section 514's requirements, Plaintiff's overtime claims are not preempted, and step two analysis is required. See Huffman v. Pac. Gateway Concessions LLC, 2019 WL 2563133, *6 (N.D. Cal. June 21, 2019).

### 2. Burnside Step Two

The Court considers whether Plaintiff's overtime rights are substantially dependent on analyzing the CBA in the second step of the analysis. See Curtis, 913 F.3d at 1153 (quoting Kobold, 832 F.3d at 1033). Defendants fail to address this issue and instead hedge all bets on the argument that "any right to overtime exists solely as a result of the CBA," which the Court addressed above. (OSC Response at 4; see MJP at 9.)

At the second step of the preemption analysis, "interpretation" is construed narrowly: "it means something more than 'consider,' 'refer to,' or 'apply.' Curtis, 913 F.3d at 1153; Kobold, 832 F.3d at 1044 (quoting Balcorta v. Twentieth Century Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000)). Even if CBAs are used as a reference in determining damages, that is "insufficient to show that a claim is substantially dependent on the CBA." See Schurke, 898 F.3d at 920, 921-22 (quoting Livadas, 512 U.S. at 125). Plaintiff's claims seek vindication of state wage and hour laws, not wage rates negotiated in the CBA. The Court finds that Plaintiff's overtime claim arises from state law.

Because Defendants have not shown that preemption is warranted under either step one or step two, Plaintiff's claim for overtime pay is not preempted by Section 301 of the LMRA.

### C. Meal Period Claim

In her first cause of action, Plaintiff alleges that Defendants failed to provide meal periods in violation of California Labor Code §§ 226.7 and 512, as well as the applicable IWC Wage Order. (See Complaint ¶¶ 30-34.) Defendants' sole argument, as with the overtime claim, is that the claim fails under the exemption in the Labor Code (here, Section 512(e)) because of a "qualifying CBA," thus, federal question jurisdiction exists. (OSC Response at 6.) The requirements of the Section 514 and 512(e) exemptions are essentially the same, except that the 512(e) exemption requires that the collective bargaining agreement "expressly provides for meal period for those employees [and] final and binding arbitration of disputes concerning application of its meal period provisions[.]" Cal. Labor Code § 512(e). While the Second CBA contains a

meal provision, the First CBA does not. (See First CBA.) As such, the Court finds that the Section 512(e) exemption does not preempt Plaintiff's meal period claim.

Plaintiff seeks to vindicate her statutory rights to meal periods, not her contractual rights under the CBA. See Vasserman, 65 F. Supp. 3d at 962; see also id. at 960 ("Meal periods are a non-negotiable right under state law. Courts have thus held that California state law claims alleging meal period violations are not preempted even where the CBA includes language entitling employees such breaks."). "There is no need to look to the CBA[] to determine whether a violation as occurred"—that is, whether plaintiffs were denied the ability to take meal periods guaranteed by statute. Id. at 962. Thus, the Court concludes that Plaintiff's meal period claim is not preempted by Section 301 of the LMRA.

**D. Remaining Claims**

In addition to claims for failure to pay overtime and provide meal periods, Plaintiff also alleges claims based on failure to provide rest periods, failure to provide accurate wage statements, and failure to reimburse expenses, among other statutory claims. Defendants request that the Court exercise supplemental jurisdiction over the remaining claims. (OSC Response at n.9.) However, because Defendants have not met their burden to establish that any of Plaintiff's claims are preempted by the LMRA, the Court lacks subject matter jurisdiction over this action and cannot exercise supplemental jurisdiction over Plaintiff's remaining claims. See, e.g., Moore v. Aramark Unif. Servs., LLC, 2018 WL 701258, *5 (N.D. Cal. Feb. 5, 2018).

**E. CAFA**

In addition to jurisdiction pursuant to preemption, which the Court rejects, Defendants assert subject matter jurisdiction under CAFA. (OSC Response at 7.)

Where a plaintiff makes a factual attack in the context of CAFA jurisdictional requirements, defendants are required to support their jurisdictional allegations with proof typically considered at summary judgment. A factual attack "contests the truth of the . . . allegations" themselves. Id. (citation omitted). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." Id. (quoting Ibarra, 775 F.3d at 1197). A factual attack "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." Harris, 980 F.3d at 700 (citing Ibarra, 775 F.3 at 1199 (finding that it is sufficient to "contest[ an] assumption" without "assert[ing] an alternative [assumption] grounded in real evidence").

Here, Plaintiff requests that the Court remand the case on the grounds that Defendants failed to prove by a preponderance of the evidence that the amount in controversy ("AIC") for the class exceeds the $5,000,000 CAFA jurisdictional minimum. (OSC Reply at 5.) In its NOR, Defendants assert that the AIC requirement under CAFA is satisfied because Plaintiff's meal and

rest break claims implicate at least $7,084,000 ($3,542,000 per claim), excluding attorneys' fees. (NOR at 4-7.)

Because the Complaint does not state the amount of damages sought, Defendants must prove that the AIC exceeds $5 million. See Ibarra, 775 F.3d at 1197. "[T]he Court must decide, based upon evidence submitted, whether the amount in controversy requirement has been satisfied by a preponderance of the evidence." Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3 (C.D. Cal. June 22, 2017). "[A] defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class." Duberry v. J. Crew Grp., Inc., 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015) (citing LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202–09 (9th Cir. 2015)). However, a defendant is "not required to comb through the records to identify and calculate the exact frequency of violations." Salcido v. Evolution Fresh, Inc., 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016). "Defendant has no obligation . . . to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." Ray v. Wells Fargo Bank, N.A., 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011). Where "a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." Id.

In their NOR, Defendants rely entirely on the Complaint for their $7,084,000 AIC estimation and provide no additional declaration or evidence in support. (See NOR.) In response to the Court's OSC, Defendants estimate an AIC of $12,490,772 ($6,245,386 per meal and rest period claim)—nearly two times the original amount—based on the Johnson Decl. and Moran Decl. (See Johnson Decl.; Moran Decl.)

Johnson, a paralegal for Durham, states that she provided Defendants' counsel with a document from Durham's HRIS that identified "the name, original hire date, work location, job title, and last known hourly rate of pay for every non-exempt employee" who is or was employed by Durham during the relevant time-period, entitled 'CA Non Exempt Durham Employees (12.12.23)' ("Spreadsheet"). (Johnson Decl. ¶¶ 2, 7.) In calculating the AIC, Moran, who has been a paralegal for Defendants' counsel for only three months, states that he reviewed and analyzed the Spreadsheet which included "the name, original hire date, termination date (where applicable), work location, job title, date of promotion to an exempt role (where applicable), and last known hourly rate of pay for non-exempt employees in California sometime during the Class Period." (Moran Decl. ¶¶ 2-3.) From this review, Moran estimates that (1) class members worked at least 260,224.43 total workweeks during the relevant time period, (2) the collective average of the last known hourly pay rate for all class members is $24.00 and (3) as a result of a 20% violation rate assumption, Plaintiff's meal and rest period claims put at least $12,490,772.64 in controversy. (Moran Decl. ¶¶ 4-10.)

Plaintiff objects to the Moran Decl. regarding estimates about the amount of weeks and shifts worked, the assumption of missed meal periods and rest periods, and the total calculation of AIC. (OSC Reply at 5-8; see Evidentiary Objections.) Plaintiff argues that Moran's estimates

constitute inadmissible hearsay, improper legal conclusions, and speculative expert testimony because Defendants did not submit any records to support Moran's declaration. (OSC Reply at 7-8; see Evidentiary Objections.) The Court disagrees.

The Moran Decl. does not reveal any "statement, other than one made by the declarant . . ., offered in evidence to prove the truth of the matter asserted." Deleon v. Time Warner Cable LLC, 2010 WL 11515279, at *2 (C.D. Cal. Apr. 12, 2010) (internal citations omitted). The Moran Decl. relies on Moran's personal knowledge and review of the Spreadsheet. "To the extent that those [payroll] records contain hearsay statements, [Defendants] [have] established that the business records are 'records of regularly conducted activity,' which 'are not excluded by the hearsay rule.'" Id. (quoting FRE 803(6).) As to Plaintiff's improper legal conclusion, FRE 704 states "[a]n opinion is not objectionable just because it embraces an ultimate issue." FRE 704(a). "The basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact." FRE 704, Notes of Advisory Committee on Proposed Rules. The Court finds that Moran's declaration does not contain improper legal conclusions. Plaintiff also objects to Moran's declaration on the grounds that it constitutes speculative expert testimony. Under Rule 702, the expert "must establish the reliability of the principles and methods employed 'to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant.'" U.S. v. Hermanek, 289 F.3d 1076, 1094 (9th Cir. 2002) (explaining that the expert failed to explain in any detail the knowledge, investigatory facts and evidence he was drawing from) (citing Kumho Tire Company, LTD., et al., v. Patrick Carmichael, etc., et al., 526 U.S. 137 (1999) (italics omitted). Here, Moran declares his role and access to the Spreadsheet, which he reviewed for the purposes of the declaration. (See Moran Decl. ¶¶ 1-4.) Accordingly, the Court may consider the Moran Decl. Plaintiff's evidentiary objections are **OVERRULED**.

The Court finds that Defendants' assumptions "lack factual support." Salazar v. Johnson & Johnson Consumer Inc., 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018). Although Plaintiff alleges violations of some regularity, it is not clear, based on these vague allegations, that each putative class member was denied a meal and rest period at a rate of 20%. (Moran Decl. ¶¶ 8-9; OSC Response at 9.) "It would be just as consistent with the [C]omplaint to assume a frequency of . . . once-per-quarter" violation based on the Complaint's allegations of "sporadic and intermitted practices." Duran v. Allegis Glob. Sols., Inc., 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021). The Johnson Decl. and Moran Decl. fail to provide sufficient evidence "that would assist the Court in making a reasonable assumption as to the applicable violation rate." Gonzalez v. H&M Hennes & Mauritz L.P., 2022 WL 179292, at *3 (C.D. Cal. Jan. 20, 2022). Thus, Defendants do "not provide any extrinsic evidence to tip the analysis in its direction, or point to anything in the [C]omplaint that might do so." Duran, 2021 WL 3281073, at *3. Defendants rely on the Moran Decl. and point to other cases where courts have accepted a 20% non-compliance rate for meal and rest periods, but they does not sufficiently explain or provide evidence of why its assumption of a 20% rate makes sense here. (See OSC Response at 9.)

Accordingly, because Defendants do not sufficiently "set forth any facts supporting its assumptions regarding the frequency of meal and rest period violations . . . the Court finds that

[Defendants] [have] failed to establish by the preponderance of the evidence the amount in controversy for these claims." <u>Salazar</u>, 2018 WL 4560683, at *3 (finding that defendant presented no facts supporting its violation rate and thus defendant did not establish by a preponderance of the evidence the AIC for plaintiffs' meal and rest break claims); <u>see also Garibay v. Archstone Communities LLC</u>, 539 F. App'x 763, 764 (9th Cir. 2013) (affirming district court's decision that defendant's evidence was insufficient to support removal jurisdiction because defendant failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than one missed rest period per paycheck or month). Accordingly, the Court finds that Defendants have failed to sufficiently allege the AIC necessary for federal diversity jurisdiction under CAFA.

### IV.   CONCLUSION

For the reasons above, the Court **DISCHARGES** the OSC and **REMANDS** the case to the County of San Bernardino Superior Court. The Court **DENIES AS MOOT** the Motion for Judgment on the Pleadings, and **VACATES** the January 22, 2024 hearing. The Clerk is directed to close the case.

**IT IS SO ORDERED.**